Frazier and I'm representing appellant Joan Roe. May it please the court, this case involves a summary judgment that was granted in a Title IX case and a back injury case that was based on several critical errors of the district court. Most importantly the district court based his ruling on four facts that he considered critical and unfortunately none of those facts are in deed correct. The first being that, well let me go back a step, Title IX is a deliberate indifference standard and it is a totality of the circumstances review. You have to look at all of the circumstances to decide if the university acted with deliberate indifference. The facts that the court thought were probative were that the NCAA compliance officer who is Janet Oberle, as soon as she learned of this report of a rape which originally came from another student-athlete, not Joan Roe, and she then spoke with Joan Roe, she then escorted Joan Roe to counseling to make sure she got the necessary counseling. But that's not what the case, that's not what the facts are. In fact Ms. Oberle did place a call to a counseling officer or a counselor and she did escort Joan Roe to counseling. However, those events were two weeks apart. Two weeks after the report of the rape when Ms. Oberle and the head coach Nancy Boyer terminated Joan Roe from the field hockey team, Joan Roe broke down in their office and was crying hysterically and that's when she was in a moment of crisis and that is when Janet Oberle took Joan Roe to a counselor. It had been two weeks since she broke down when she found out she had been terminated from her field hockey team. The second incorrect fact was the court stated that Ms. Oberle contacted an academic support person. These are all in the briefs, aren't they? Yes, they are. Our argument is usually focused on the legal issue. Well, if you'd like, Your Honor, I will turn to this. I don't know, it's your argument. What's the deliberate indifference that caused the rape in your view? No. No, it's deliberate indifference in reacting to the report? Correct. And then what harm did that cause to your client? It caused all sorts of psychological damage. Psychological harm to your client. Yeah. Okay, so that's your theory that they didn't respond, they were not, it's not, they were deliberately indifferent when they learned of the sexual assault and that harmed your client. Correct, and that's why we had the trauma expert as an expert. Now that brings me to what seems to me to be a critical issue because Ostrander makes a reference to the clearly unreasonable standard from Davis. Correct. But it's in the context of conduct that either contributes to the happening of the abuse or makes abuse more likely, abuse of other students more likely. Now, so does the clearly unreasonable response, is that clearly unreasonable, what we might say, vel non, or only if the response unreasonably makes students more vulnerable to abuse in the future? It seems to me it's the latter. What does answer that question directly, Your Honor? Unless it means it's just clearly unreasonable as you might incorporate in some kind of tort law. Okay, that's fine, that's what I see your argument to be, but I don't think that's Title IX. I think Title IX is in the clearly unreasonable conduct in the sexual abuse context. It means it's either clearly unreasonable conduct that caused or contributed to the abuse or contributes to such abuse happening in the future. Now, from that standpoint, your client wasn't harmed, right? That I disagree with. How? What in the response made future students more vulnerable to the kind of abuse she suffered? Well, allow me to answer that and rephrase it for a dovetailing point. It's also the purpose of the Title IX, including this particular aspect of it, is not just to protect women from being raped. The underlying purpose is to protect women from having a hostile environment in the educational setting. And Senator Bayh's comments are supposed to be controlling authority. So every crabby or insensitive counselor is violating Title IX if the counseling is for a woman? Absolutely not. I'm not saying that at all. But that is what you're saying. You're saying that there has to be a happy, Title IX mandates a happy environment for women in school, which would be a good thing, but I don't think it's mandated. It is mandated that they have an environment that is free from sexual or a hostile environment. Now, I argue that when one woman comes forward and she's raped, and all the other, by the way, don't forget, it was other women that reported that she said she'd been sexually assaulted. What are you telling all the other women on that team, on that campus, when you treat this one with disregard? What evidence is there that would address that at all? Pardon me? What evidence in the record addresses that at all in your response? We did not put forward evidence of how other women took it. I consider it a common sense proposition. Well, there has to be some advertising. There has to be some common knowledge. I would guess what these counselors do with individual students is treated confidentially. Actually, not in this case. We've spoken about how Claudia Charles did communicate with the vice president's office, I believe, and the athletic department for certain. We're talking about how you're saying that what's alleged to be the mistreatment in responding to Ms. Rowe's crisis would necessarily be known because you're saying that it would incite or cause future sexual abuse on the campus. No, I think I must not have communicated this clearly. This case is not resting on Claudia Charles in any way, shape, or form. Claudia Charles is one of a multitude of factors. What in the response was such that it would make students more The failure to investigate. The failure to investigate. A wholesale failure to investigate. Because it would embolden other abusers or because it would have some effect on other females? Yes, and because there's at least one person that we allege to be a predator who's still out there. There was no investigation. That was one of the key mistakes the district court thought. The district court thought when Officer Purvis said, immediately upon hearing from Joan Rowe's father, I began an investigation. That wasn't the requisite starting point. That was two months after the report of the rape. It was after this student had left school and gone home for Christmas vacation. So that two-month intervening period, nothing was done. And in actuality in this case, even when something was done, it did not include an interview of a single fraternity member, far unlike Ostrander. Not even at IFC meetings, which were attended by the fraternity and the fraternity officer representing SLU. It never even was brought up. This incident happened at a fraternity house? Not a fraternity house, at a fraternity party off campus, which is debated by Were there only fraternity members there? No, there was more than fraternity members, but there was 90% of the fraternity. If I may, there are also adverse acts here, which I have not seen in any other Title IX case. Acts that surely are discouraging to other students. Now other teammates knew of this assault. The day after it was reported, Joan Rowe was suspended from her team. Two weeks later, she was terminated from her team. And that was five days after her scholarship had been threatened. I'm not sure. Let me, if I may, there were no accommodations made. There was no investigation. Her workload was actually increased after the rape, not decreased. I mean, I thought her academic performance was Questionable. Dreadful. Yeah, it was. All at this same time. Correct. And having nothing to do with the rape. That's why we put in that Joan Rowe was a very good student before this period in her life, and eventually, recently, she's been a very good student again. It's in our separate statement. Excuse me. Now, wait a minute. She got her grades on October 24th. Correct. The rape occurred October 26th or 28th. Yes. So that had nothing to do with the grades. Correct. Her bad grades on her freshman midterms had nothing to do with the rape. Right. That's true. And that contributed to being basically academically ineligible. Well, no, but there was a chance she could have been. Well, she was not allowed. She would have been on some kind of field trip with the team. They didn't take her to Pennsylvania. On the day that she was raped, if her grades hadn't been so bad. Correct. And that's not uncommon for a freshman at school to have bad midterm grades. I know, but your linkage of all this is counterintuitive to me. I don't understand how it all ties together into the response. The response is you can't treat a rape victim this way. You just can't do it. And it's not healthy for her, for sure, but it's also not healthy to anybody else. That's why there's a line of cases coming out of Connecticut that say it's the exposure. If you're a poor athlete but you get raped, you can't get kicked off the team. I don't believe that, but I believe what's the hurry? I believe why do you have to do it right now? You can't wait? Freshman can't recover grades? Title IX doesn't micromanage the world that way. I'm not asking you to, but what's the hurry? You don't have to do this right now. Give her incompletes. Do something. Did it violate federal law to do it? I believe it did. I don't understand. I don't think this is just deliberate indifference. I think this was animus. And, by the way, what's the key fact that happened between the rape? What's the evidence of animus by anybody? Well, on April 13, we know that she's kicked off the team from the notes of an athletic trainer who wrote that in her medical notes. They're claiming it was on the 15th because she lied about attending a class. I don't think that that's. I haven't heard any animus yet. Animus motivated by what? Motivated by what? By her being a bad student, by not believing she had been assaulted. I'm just missing. What's the evidence, documentary or testimonial, that anyone didn't believe she was assaulted? We have an e-mail from one of the president's staff. Someone's reporting it up the food chain and says, by the way, I don't think Janet Oberle believed she was assaulted. When the parents first spoke. That's not admissible. When she first spoke to president of the university, her parents called the president in January. When they found out, the very first question he said was, how do we know there was any sex whatsoever? Now, he didn't know the mom had kept a skirt, which subsequently produced a semen stain with the eventual. Who kept the skirt? The mother did. The parent that wasn't told? When the daughter went home on Christmas break and the parents finally said, what's wrong with you? They had asked all these officials at SLU several times, and they all said, nothing's wrong, it's just grades. They lied in her, they just lied to them. When the daughter went home, they said. I did what she asked them to do. Don't tell my parents. Right? Yes. Okay. Okay. When she went home, she told her parents what had happened. They said, what's wrong? You're not the same person. And that's when she broke down and tells them. Mom says, what were you wearing? And she takes it and keeps it. So what happened when that was turned over to the public safety department? It was turned over to the police department, who analyzed the DNA and made a positive ID. So what happened then? Now, I intended to reserve some time, but I think this is probably more important. If you wouldn't mind, just briefly, what happened then? Was there an investigation then? Yes. Then the St. Louis PD did an investigation, and they determined that there was at least one person's DNA on there, other than hers, and there was another one that was unidentifiable. And they conducted an investigation and eventually did not press charges because it was a he said, she said case at that point, in their opinion, or at least they couldn't meet their burden of proof, which is a heightened burden of proof, obviously. Thank you. Mr. Berryman? May it please the Court, Counsel? I'm not exactly sure where to begin. I had some prepared notes, but I think I'm going to go off script here a little bit. We'll take my legal standard question. What does clearly unreasonable have to relate to? Well, I agree with your reading. Is it just asking the jury was this unreasonable, was this response unreasonable, or is there something else that Title IX requires? No. The clearly unreasonable response has to be in light of all the known circumstances following a report of assault. Well, that's just tort law. I'm talking about what relates it to. Deliberate indifference, Judge, I believe under the law, if it can interfere with a student's equal access to education. Following the report of an assault, if an institution doesn't react in a non-clearly unreasonable way, there can be liability. That's the standard. That's why the standard is so high. Well, but is there liability even if the only person affected is Joan Rowe? I think the university has an obligation to respond in a manner that's not clearly unreasonable. But that standard is really set forth in Ostrander because they address their response to the complaint. So you think then it comes down to whether they were clearly unreasonable in the response here. Whether there were. If there's a fact issue on that, then it goes to trial. Correct. And Ostrander is much narrower than that. You must be getting this from Davis or perhaps from your clients. I believe Davis says that. I believe Davis says that. This untethered, so to speak, definition of clearly unreasonable. I don't know if it's untethered. In this context. In this context, Your Honor. A response to a I was sexually abused by either what may have been a student or a non-student she wouldn't identify. Right. Ostrander. So if a student in your view or your client's view, if a student came in and said, I was raped off campus by someone coming home from class yesterday. And the response was, that's police business, go tell them. That's a Title IX violation. I think that could be, I don't know if it's a Title IX violation, but it would be evidence towards deliberate indifference if that's all they did. Possibly. Now, in this case, the weird thing, I think we can kind of get beyond some of this because much of what Mr. Frazier argued in his 15 minutes isn't in the record. The strangest thing about this case is that the response to our summary judgment motion, 132 facts, the majority of which came directly from plaintiff's own deposition testimony in August 2009 and January 2010, stood undisputed. He filed a response under Rule 56D saying I can't justify a response to these facts and I need more time for discovery. Because that motion, we believe, was not well taken and Judge Autry agreed. And that decision's only reviewed for an abuse of discretion. We're left only with the facts that the university set forth as undisputed under Eastern District Local Rule 7-401, which says that if you don't controvert facts specifically in the manner that the rule prescribes, the facts are deemed admitted. Period. So what about his claim that Oberle didn't respond reasonably, or that she responded in a clearly unreasonable manner? Well, it's obvious to me, and I believe the district court, that that isn't the fact. What Oberle did is detailed in our statement of facts. She met with Joan Rowe immediately when she heard the report from the two team captains. She encouraged her to report the incident. She encouraged her to go to counseling. She did walk her to counseling. She did ask her to report the matter to student conduct and file a complaint. She called DPS to alert them that they may be receiving a complaint from the student. She took some action to ask the academic advisor to reach out to her parents, so that there could be hopefully some line of communication open, because Ms. Rowe was certain that she didn't want her parents to know about this at all. When you contrast that to what happened in Ostrander, which is that they went to the fraternity and said, investigate yourself, because in that case there had been two prior complaints against this fraternity for sexual assault. And by the way, I encourage you to have a training session that I'd like 75% of the people to attend. There was no follow-up with the person complaining, and that was the end of it. And this court in 2003 held that was not a clearly unreasonable response. When you take the undisputed facts in our case, and you compare them to that, I don't think you can get there. Now, as far as what the plaintiff mentioned a couple of items that he believes the district court got wrong, and we addressed those at pages 28 through 30 of our brief. Pardon me, 37 through 40 of our brief. But in a nutshell, they kind of set up a straw man and say the district court says something it didn't say. What the district court said is that immediately following Overly and Plaintiff's meeting, Overly contacted a counselor. That's absolutely true. It says Overly then escorted Plaintiff to Charles' office to make sure Plaintiff met with a counselor. That's absolutely true and undisputed in the record. As far as contacting DPS, even they admit in their opening brief, it's true. Once the father contacted DPS, they immediately began an investigation. The St. Louis Metropolitan Police took over and investigated the matter for a lengthy period of time, talked to a lot of people, did DNA tests. And- Was the alleged perpetrator a student? He was a student, but I don't believe he came back in the springtime. He wasn't back, but again- He was at the time, at the time of the incident. At the time of the incident, he was a student. He was a student, yes. Yes, sir. By the way, the perpetrator- Did he not come back because the university took action, or just on his own? I honestly don't know the answer to that. It's not in the record. I do know, outside of the record, and well, I guess it's in the police report. He came forward and cooperated with the police in the investigation, such as it was. The police report, I believe, is appended. Did he claim consensual activity? Yes, your honor. So, in a nutshell on that, we believe it's plain that the court didn't abuse its discretion in denying 50-60 relief. Given the poor extensions of the case management order, the plaintiff's taking of 22 depositions, a number of pages of discovery that were exchanged among the parties. There was a reference earlier to the identification of a rape trauma expert that they talk about. That's not in the undisputed record on our summary judgment motion. It's stuff that might have been in the constellation of the case, but it was not a specific response to our motion for summary judgment. And the rules are in place for a reason. It's another question that's looming in the brief. Did the district court consider the facts submitted in this compendium? I don't see any reference to the compendium in the district court's opinion, looking at it quickly. It did not. How do we know that? It doesn't say I'm not considering it. Well, it does say, Judge, that he- I was just looking for that, because the party, I mean, you debate all this. I understand the motion for no discovery, but I don't understand this compendium flap and its relevance to the district court. From the plaintiff's perspective, here's what happened. The case was- What did the district court, did the district court either, I mean, I know there are two judges and we only have one opinion in the addendum. Did either district judge say, I'm not considering the compendium because it's not submitted in accordance with Rule 56 standards? No, what the court did, the court did say, I guess footnote one, under the factual background of the case on the first page. The court's recitation of facts is drawn from SLU's statement of material facts filed in conjunction with its motion for summary judgment. Our motion packet, we believe, stood by it on its own. After this was fully briefed, on June 28th, 2012, by the way, our motion was filed in April. The plaintiff filed a document entitled Compendium of Facts that I may use to support some motion and oppose others. It was not authorized by any rule. Leave at that time was not sought to file it. On July 17th, the plaintiff filed two separate partial motions for summary judgment and a motion for leave. All right, say again, when was the compendium filed in relation to the court's ruling? It was filed June 28th, 2012. And the court ruled when? December 31. So it was before the court, it was filed. It was. It was part of the summary judgment record. It was part of the record on the plaintiff's motions for summary judgment. And I don't want to explain that. What happened was, the plaintiff filed a motion. And you think, therefore, it wasn't part of the record on your motion? Correct. What a circuit case supports that? Well, Eastern District Local Rule 7-401 says that. But did the district court, I didn't see the district court apply that rule and say I'm only considering the compendium for plaintiff's motion. Judge, the plaintiff on July 17th filed a motion in stock at number 287 and asked for leave to utilize this compendium only in support of her partial motions for summary judgment. All right, what was the ruling on that? He denied it. And he said, if you want to file separate statements of fact consistent with the rules, file them. And they did. And then we filed a motion for leave to respond. You told me three minutes ago the court never refused to consider the compendium. Now you're telling me it did? It didn't specifically say, Judge, that I have not considered any of the facts in the compendium. But it denied a motion for leave to have it considered in connection with the plaintiff's motion. One was never filed. It denied that motion you just waved at. I'm sorry. In conjunction with the plaintiff's motion, it denied their motion to use this compendium document. But it granted leave to file separate statements of fact in accordance with the rules. What the plaintiff never, I'm sorry, Judge. And was there a response from the plaintiff that? Sorry? Was there a response by the plaintiff then? Yes, the plaintiff then filed facts in support of its motion. Frankly, all of which we thought were either immaterial or undisputed and don't affect our right to judgment as a matter of law under Ostrander. But we responded, we asked for leave. What the plaintiff never did was ask for leave to place facts before the court in conjunction with our motion for summary judgment. Which again was based, 82 or so of the facts were based on plaintiff's words. See, before your time runs out, I had one question on the negligence claim. The district court ruled on this ground of waiver. What do you say about the fact that the form that the plaintiff signed was captioned acknowledgment and waiver for soccer? It does say that. And that she apparently testified or submitted by affidavit that she was told to disregard portions of the documents that were not applicable to her. Why, taking those two things together, should the district court have held that this waiver eliminated her negligence claim, this waiver for soccer? Yes, first of all, in the undisputed facts that we set forth, and I asked her about this in her deposition at page 67 of her deposition of August 2009. I know, she said she understood the documents. She said she understood it. She understood it, but it says it was acknowledgment and waiver for soccer. So all she said was I understood that this document was an acknowledgment and waiver for soccer. The affidavit though in which she says that was filed on June 26th, or signed June 26th, 2012, it's not in the record on my summary judgment motion. All right, well even without her affidavit, why is this a clear and unambiguous waiver of her rights? Because while the title says soccer, I'm sorry judge, I didn't mean to interrupt your question. Go ahead, go ahead. While the title says soccer, the language of the release is clear and broad, and it expressly says that I'm waiving you for claims for participation in intercollegiate athletics. It's not limited to soccer. Well, why doesn't the title limit it to soccer? Because she understood it, if there was ambiguity raised, they should have converted the facts and said I didn't understand it like they tried to do much later, because the document is not self-limiting. I don't understand why her acknowledgment that she understood it means that it was binding on her. She could have understood it and she could have meant, I understood that this was a waiver for soccer. Because the language, I'm sorry judge, because the language of the release in the paragraph quoted by the district court and cited in our brief isn't limited to soccer. The title says that, but the release language is much broader. I agree with, I understand that argument, but the question is whether taking the title with it limits the scope of part one of the form as opposed to two and three. Our position would be that she understood she was releasing claims for negligence by the staff of St. Louis University. If they wanted a controverted claim in ambiguity, they should have raised those facts and they didn't. But also on that point, there were two other grounds we raised we thought that would defeat the negligence claim. And one was the failure to provide any expert evidence of differential diagnosis, which Missouri law requires. And secondly, no evidence of a duty, expert evidence of a duty for an athletic trainer under these circumstances or breach of that duty. So this court can, under its precedent, affirm on other grounds if that's a concern. Do you understand the claim to go only to the trainers? The negligence claim? As I understand it, yeah, the athletic trainers and the weight lifting activities that were ongoing. Yeah, the doctor was very clear that he held, and that's quoted in our undisputed facts, that he had no quarrel at all with St. Louis University's physicians in their treatment of Ms. Rowe. With that, your honors, I believe my time is up. Unless there's further questions, I appreciate the court's time. Thank you, counsel. Does Mr. Fraser have any time? 23 seconds, your honor. I'll give you a minute. I'll give you a minute. Thank you. I think that what just came up, that the judge's questioning was important on the line of questioning about what about facts submitted in opposition, or are facts that were not considered. I looked at the entire line of cases from this circuit that were submitted by opponent, about 56D, and when 56D is not appropriate, what's the remedy? And in all those cases that your honors, by the way, were on, all of this line of cases, Ray, Rakes, etc. The court looked at both sides' evidence, regardless of whether 5060 was approved, because they're part of the record. We put these in in a compendium because they were going to be used for several motions. We thought it would be the most convenient for the court. Our motions opposed their motions, and there was a motion to strike Dr. Rogers that was also pending. The court obviously took note of our facts, because it ordered me to basically unzip them. Much later, six months later, it said, you know what? I'm not going to let you use it in that format. Unzip those facts and put them into separate, separate statements. One that concerns your back summary judgment, and one that concerns your title nine summary judgment. We complied. We put those facts, we didn't change the numbering for the convenience of all parties, because opponent had already briefed an opposition based on the facts and numbers, the numbers of the facts and exhibits. But we put them back in. And your honor asked, did this court address any of that? No, that's what's been kind of hard for us to understand, and frankly, to brief this appeal. There's no mention of our facts whatsoever. Indeed, throughout the judge's order, he says, there is no evidence having been presented to support this or support that. And he says, plaintiff can't rely solely on her pleadings, speculation, or mere fantasy. It's as if we never submitted these facts. I'm not sure how that happened. But we would appreciate at least a remand for the judge to make his decision based on all the facts. Because we have at least 15 to 20 undisputed facts. Remember, St. Louis University opposed our motions twice. Several of our important facts went undisputed. So even if we want to talk about undisputed facts, there's undisputed facts on both sides. And unless there's further questioning, I'll terminate. Thank you, your honors. Thank you, counsel. Case has been thoroughly well briefed and argued, and we'll take it under advisement.